**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TIFFANY ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08 C 185 |
| | ) | |
| H&R BLOCK ENTERPRISES, INC. and | ) | Honorable Judge Guzman |
| HSBC BANK USA, NA, | ) | Honorable Magistrate Judge Ashman |
| | ) | |
| Defendants. | ) | |

**DEFENDANT H&R BLOCK ENTERPRISES, INC.'S
<u>MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS</u>**

Pursuant to Fed. R. Civ. P. 12(b)(6), H&R Block Enterprises, Inc. ("H&R Block")

submits this Memorandum in Support of its Motion to Dismiss Counts I, III, IV, and VI[1] of

Plaintiff's Amended Complaint (*i.e.,* all claims asserted against H&R Block).

**I.    INTRODUCTION**

Plaintiff's suit arises out of her accusation that an unnamed "imposter," who Plaintiff

suggests may have been employed by H&R Block, stole Plaintiff's identity and wrongfully used

it to obtain a Emerald MasterCard ("Emerald Card") and an attendant $600 loan from Defendant

HSBC Bank USA, NA ("HSBC Bank" or the "Bank") for prepaid credit in Plaintiff's name.

Plaintiff's Amended Complaint concedes that, upon learning of Plaintiff's claim, H&R Block

took prompt action to address the situation, told Plaintiff that the loan would be forgiven and

offered to provide her credit security protection and to prepare her taxes free of charge.  Plaintiff

also concedes that the loan was, in fact, forgiven, and the Emerald Card was closed.  Yet,

Plaintiff has filed the instant suit seeking to impose liability upon H&R Block and the Bank

---

[1] Plaintiff's claim for "invasion of privacy," the fifth count in her Amended Complaint, is
numbered in that pleading as "Count VI."  There is no Count V in the Amended Complaint.  For
the sake of clarity, this motion adopts the numbering used in Plaintiff's Amended Complaint.

under a variety of legal theories, ranging from claims asserted under the Equal Credit

Opportunity Act ("ECOA") and Fair Credit Reporting Act ("FCRA") to state statutory and

common law causes of action.  None of Plaintiff's efforts to state a claim against H&R Block,

however, is sustainable.  Rather, Plaintiff's counts against H&R Block fail as a matter of law for

multiple reasons, including: (1) The ECOA provisions asserted by Plaintiff apply only to

"creditors," not to H&R Block; (2) H&R Block is not vicariously liable for the imposter's

intentional identity theft; and (3) Plaintiff has not stated any viable claim under Illinois law.

Accordingly, and for the reasons set forth herein, H&R Block respectfully requests an

Order from this Court dismissing all counts against it.

## II.    ALLEGED FACTS

### A.    The Parties

Plaintiff's Amended Complaint describes H&R Block (the moving defendant) as "a tax

preparation company that has offices in this District."  Am. Complaint, ¶ 3.  Plaintiff Tiffany

Robinson ("Plaintiff") alleges that she is an individual who resides in this District.  Am.

Complaint, ¶ 2.  Plaintiff contends that she "had H&R Block do her taxes in 2003" and returned

to H&R Block for further services in 2007.  Am. Complaint, ¶¶ 6 and 9.

Also named as a defendant in this suit is HSBC Bank, which Plaintiff describes as "a

California corporation…."  Am. Complaint, ¶ 4.  Plaintiff alleges that HSBC Bank issued the

prepaid Emerald Card in Plaintiff's name that is at issue in this suit.  Am. Complaint, ¶ 38.

### B.    The Nature of the Suit

This action arises out of Plaintiff's assertion that she has been the victim of identity theft.

Plaintiff alleges that on or about January 30, 2007, she went to an H&R Block office to have her

income tax return prepared and to apply for an Instant Money Advance Loan ("IMAL").  Am.

Complaint, ¶ 6.  She alleges that H&R Block told her that HSBC Bank had denied her IMAL

application and that a statement of the reasons for this denial would be forthcoming from the

Bank.[2]  Am. Complaint, ¶ 8 and Exhibit 2.  She says that H&R Block told her that, although it

"would do her taxes, … they would take a sum of $600 out of her refund" to repay an "H&R

Block Emerald Prepaid MasterCard" that she had previously received.  Am. Complaint, ¶¶ 6-8,

and Exhibit 2.  Plaintiff alleges that the Emerald Card at issue was, in fact, issued by HSBC

Bank on January 28, 2007.  Am. Complaint, ¶¶ 7 and 38.  Plaintiff contends, however, that she

neither applied for the card nor received the corresponding $600 loan.  Am. Complaint,¶ 10.

Rather, Plaintiff alleges that she was the victim of identity theft by an unnamed "imposter" who

stole her identity to open the Emerald Card.  Am. Complaint, ¶ 9.

       Plaintiff contends that when she learned that the prepaid Emerald Card had been issued in

her name, she "insisted that she had not taken out a loan and requested to speak with a manager."

Am. Complaint, ¶ 10.  Plaintiff alleges that she "spoke with the person in charge at that H&R

Block location" who provided her information about the transaction in question.  Am.

Complaint, ¶ 11.  Plaintiff states that on January 31, 2007 and in the following days, she also

spoke with various other persons at H&R Block offices about the identity theft incident,

including Arthur Grant, "who identified himself as the district manager of H&R Block," and a

private investigator that Plaintiff contends H&R Block retained "to look into the case."  Am.

Complaint, ¶¶ 13, 14, 17 and 28.  Plaintiff contends that Mr. Grant called her on February 2,

---

[2] The letter appended by Plaintiff to her Amended Complaint states:

    Thank you for applying for an Instant Money Advance Loan.  As you know, H&R
    Block does not approve or deny applicants for an Instant Money Advance Loan.
    Instead, the lender, [HSBC Bank], is the entity which determines eligibility.

    Regrettably, HSBC is unable to grant your request for an Instant Money Advance
    Loan at this time.  A letter will be sent to you from HSBC with more specific details.

    If you have any further questions regarding your loan denial, please write or call:
    [HSBC mailing contact information and toll-free phone number]

Am. Complaint, Exhibit 2.

2007 and "informed plaintiff that the $600.00 loan would be forgiven and that her tax return would be prepared free of charge. He also indicated that H&R Block would provide plaintiff with credit security protection for one year." Am. Complaint, ¶ 17. Plaintiff concedes that the Bank confirmed to her that H&R Block reported the alleged identity theft incident to the Bank and that the Bank would "not hold her responsible for the $600 loan." Am. Complaint, ¶ 24 and Ex. 3. Plaintiff also concedes the Emerald Card at issue was closed. Am. Complaint, ¶ 16.

Plaintiff's Amended Complaint does not allege any specific misconduct by H&R Block to injure her. *See, generally,* Am. Complaint. Instead, the Amended Complaint focuses on alleged intentional (and likely criminal) misconduct by an unnamed "imposter." *Id.* The sole allegation of any relationship between H&R Block and the imposter is that Plaintiff assumes a connection based on a statement in a letter from HSBC Bank that described her identity theft claim as "involving one of [H&R Block's] employees." Am. Complaint, ¶ 26 and Exhibit 3. Plaintiff's Amended Complaint does not allege (and could not truthfully allege) that the misconduct attributed to the imposter was perpetrated on behalf of H&R Block or that it was within the course or scope of any relationship between the anonymous identity thief and H&R Block. To the contrary, Plaintiff's own allegations confirm that, upon learning of Plaintiff's identity theft claim, H&R Block, for its part, took swift action to address and try to rectify the situation. *See, e.g.,* Am. Complaint, ¶¶ 17 and 28. Nonetheless, Plaintiff initiated the instant litigation, purporting to assert four Counts against H&R Block: (1) Violation of the ECOA;[3] (2) Violation of the FCRA; (3) Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act; and (4) Invasion of Privacy. The present motion is brought to dismiss each and all of these Counts against H&R Block, because none states a claim upon which relief may be

---

[3] This claim is asserted against the Bank "or alternatively against H&R Block." Am. Complaint at ¶ 39.

granted.

## III.    ARGUMENTS AND AUTHORITY

### A.    Standard Of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint. *Zurich Capital Markets, Inc. v. Coglianese*, 228 F.Supp.2d 847, 855 (N.D. Ill. 2004). Dismissal is proper when, viewing the complaint most favorably to the plaintiff, it appears the plaintiff can prove no set of facts that support the claim. *Id.* That standard is met in this case.

### B.    Plaintiff's ECOA Claim Fails Because H&R Block Is Not A "Creditor" For Purposes Of The Relevant ECOA Provisions

The ECOA was enacted to prohibit discrimination in credit transactions. *See* 15 U.S.C. § 1691 *et seq.* The ECOA delegated the power to implement regulations in furtherance of carrying out the Act's purpose to the Federal Reserve Board ("FRB"), which the FRB did via 12 C.F.R. §§ 202.1-202.15. ("Regulation B"). 15 U.S.C. § 1691b(a).

Plaintiff here does not allege that she was discriminated against in any respect by H&R Block. Rather, her ECOA claim against H&R Block alleges a technical violation of the statute: the purported failure to provide a sufficient statement of the reason(s) why her 2007 IMAL application was denied. Plaintiff's claim purports to rest on ECOA § 1691(d), which requires "creditors" to provide consumers with a notice of reasons when an adverse action is taken:

> (2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the <u>creditor</u>. A <u>creditor</u> satisfies this obligation by--
>
> (A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or
>
> (B) giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained. Such statement may be given orally [under some circumstances].

15 U.S.C. § 1691(d) (emphasis supplied).  Under the ECOA, a creditor is defined as follows:

> The term "creditor" means any person who regularly extends, renews, or
> continues credit; any person who regularly arranges for the extension, renewal, or
> continuation of credit; or any assignee of an original creditor who participates in
> the decision to extend, renew, or continue credit.

15 U.S.C. § 1691a(e).  Regulation B clarifies that, for purposes of this notice requirement,

"Creditor means a person who, in the ordinary course of business, regularly participates in a

credit decision, including setting the terms of the credit…."  12 C.F.R. § 202.2(1).  The

comments to this regulation explain that "creditor" is defined more narrowly for purposes of the

ECOA's technical notice requirement than it is for the Act's broader discrimination prohibition:

> [W]here the only role a person plays is accepting and referring applications for
> credit, or selecting creditors to whom applications will be made, the person meets
> the definition of creditor but only for the purposes of the prohibitions against
> discrimination and discouragement… <u>Where the [person] only accepts
> applications for credit and refers those applications to another creditor who makes
> the credit decision – for example, where the [person] does not participate in
> setting the terms of the credit or making the credit decision – the [person] is
> subject only to [the ECOA's discrimination prohibitions, **not** its notice rule</u>].

68 Fed. Reg. 13144-01, 13155 (emphasis supplied).

H&R Block is not a "creditor" subject to the notice requirement.  There is no allegation

that Block regularly makes credit decisions nor sets the terms of credit.  12 CFR § 202.2(l).  To

the contrary, H&R Block is alleged to be a "tax preparation company."  Am. Complaint, ¶ 3.

Moreover, Plaintiff's own complaint concedes that H&R Block told her – in writing –

that <u>HSBC Bank</u> (not H&R Block) was the entity that denied her application, that <u>the Bank</u>

would be the one to provide her with more specific details for its decision, and that she should

contact <u>the Bank</u> (via provided contact information) with any questions.  Am. Complaint at

Exhibit 2.  Even assuming for the sake of argument that this letter somehow was insufficient to

comply with the ECOA's notice requirement (a point that H&R Block does not concede), there

can be no question that the allegations of the Complaint, including Exhibit 2, do not provide any

basis to hold H&R Block liable as a "creditor" for purposes of the ECOA's notice provision.

Accordingly, Plaintiff's ECOA claim fails as a matter of law against H&R Block.

**C.　　Plaintiff's Remaining Claims Against H&R Block Fail Because H&R Block Is Not Vicariously Liable For The "Imposter's" Alleged Intentional Misconduct**

Plaintiff's claims against H&R Block are premised upon alleged intentional misconduct

of another – namely, an unnamed identity thief who Plaintiff suggests may have been employed

by H&R Block. *See, generally,* Am. Complaint. As such, Plaintiff's claims are predicated upon

the assumption that H&R Block would be vicariously liable for the intentional (and potentially

criminal) misconduct of the "imposter" by whom Plaintiff claims to have been victimized. As a

matter of law, however, H&R Block is not subject to liability on the facts alleged.

In Illinois, "[f]or an employer to be vicariously liable for an employee's tort under the

doctrine of *respondeat superior*, the tort must have been committed within the scope of the

employment." *Montgomery v. Petty Management Corp.*, 752 N.E.2d 596, 598 (Ill. App. 1 Dist.

2001). "No precise definition has been accorded the term 'scope of employment,' but broad

criteria have been enunciated:

'(1) Conduct of a servant is within the scope of employment if, but only if:

　(a) it is of the kind he is employed to perform;
　(b) it occurs substantially within the authorized time and space limits;
　(c) it is actuated, at least in part, by a purpose to serve the master,

(2) Conduct of a servant is not within the scope of employment if it is different in
　kind from that authorized, far beyond the authorized time or space limits, or
　too little actuated by a purpose to serve the master.'"

*Id. (internal citations omitted)*. The burden is on the plaintiff to prove the contemporaneous

relationship between the tortious act and scope of employment. *Id*. at 598-99. "…[I]n

determining whether an employee's act was committed within the scope of his employment, the

focus is generally upon the issues of whether the act was conducted substantially within the constraints of authorized time and location of the employment, and whether the conduct was actuated at least in part by a purpose to further the employer's business." *Randi F. v. High Ridge YMCA*, 524 N.E.2d 966, 970 (Ill. App. 1 Dist. 1988). "[I]f the employee acts purely in his own interest, liability under *respondeat superior* is inappropriate." *Id.*

In the case at hand, there is no allegation that the imposter's supposed intentional misconduct – stealing Plaintiff's identity to open a prepaid Emerald Card – was undertaken within the course and scope of employment by H&R Block. To the contrary, such an allegation would defy truth, logic and the established law. Even assuming that the imposter was employed by H&R Block (which is not unequivocally plead in the Amended Complaint), as a matter of law, H&R Block would not be vicariously liable for the alleged theft. *See Nat'l Accident Ins. Underwriters, Inc. v. Citibank*, FSB, 333 F.Supp.2d 720 (N.D. Ill. 2004) (holding that an employer is not vicariously liable for an intentional theft by its employee).

The Court's decision in *National Accident* is informative here. In that case, the plaintiffs' claims arose out of a scheme to alter the payee line on checks and deposit them in a bank account for the perpetrator's own use. *Id.* at 722. Citibank, a defendant in the suit, asserted a counterclaim seeking contribution from the perpetrator's employer on the basis that it would be vicariously liable under the doctrine of *respondeat superior*. *Id.* at 728. The Court dismissed Citibank's claim, because, "the *respondeat superior* doctrine simply cannot apply given the facts as pled by Citibank. It strains reason to contend that an employee that steals millions of dollars worth of checks payable to his employer is somehow acting to serve that employer." *Id.*

So it is here. It "strains reason to contend" that a person who intentionally steals the identity of an H&R Block client and obtains a prepaid credit card in the client's name could have

been acting to serve H&R Block.  Indeed, Plaintiff has asserted no such contention.  As a matter

of law, H&R Block is not vicariously liable for the alleged intentional misconduct of the

unnamed "imposter," and the claims against H&R Block should, thus, be dismissed.

     **D.**     **Plaintiff Failed To State A Claim Under The  Illinois Consumer Fraud Act.**

     Plaintiff alleges that "Defendants engaged in unfair and deceptive acts and practices, in

violation of ICFA § 2, 815 ILCS 505/2, by violating the FRCA (*sic*) as well as allowing an

employee to steal plaintiff's identity and attempting to hold plaintiff liable for the debt after

receiving notice that the debt was the result of identity theft."  Am. Complaint, ¶ 44.  "The

elements of a private cause of action for damages based on a violation of the Act are: (1) a

deceptive act or practice; (2) intent by the defendant that the plaintiff rely on the deception;

(3) the deception occurred in the course of conduct involving trade or commerce; and (4) the

plaintiff's injury was proximately caused by the fraud complained of."  *Rockford Memorial*

*Hosp. v. Havrilesko*, 368 Ill. App. 3d 115, 121 (Ill. App. 2 Dist. 2006).  To plead such a claim, a

complaint "must state with particularity and specificity the deceptive [unfair] manner of

defendant's acts or practices, and the failure to make such averments requires the dismissal of the

complaint."  *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002).

"[W]hether a given set of circumstances is unfair or deceptive must be determined on a case-by-

case basis."  *Falcon Associates, Inc. v. Cox*, 699 N.E.2d 203, 209 (Ill. App. 5 Dist. 1998).

     In the case at hand, Plaintiff has not alleged deceptive or unfair conduct by H&R Block.

     **1.**     **Plaintiff Has Not Alleged Sufficient Facts To Sustain A Claim For**
               **Deceptive Conduct Under The Consumer Fraud Act.**

     Deceptive conduct cases generally involve misrepresentations or intentional omissions.

"[A] complaint alleging a violation of consumer fraud must be pled with the same particularity

and specificity as that required under common law fraud."  *Prime Leasing, Inc. v. Kendig*, 773

N.E.2d 84, 96 (Ill. App. 1 Dist. 2002). "In order to adequately allege a deceptive act or practice, the plaintiff 'must allege who, what, when, where and how' the alleged fraud occurred." *U.S. v. All Meat and Poultry Prod.*, 470 F.Supp.2d 823, 830 (N.D. Ill. 2007).

In this case, Plaintiff has not only failed to allege sufficient facts with particularity to support her claim, she has failed to allege *any* facts to support her claim. Plaintiff does not contend that anyone acting on H&R Block's behalf misrepresented nor omitted to disclose a material fact. Instead, Plaintiff alleges that H&R Block violated the Act "by violating the FRCA (*sic*) [ostensibly by virtue of the identity thief's alleged misuse of Plaintiff's credit report] as well as allowing an employee to steal plaintiff's identity and attempting to hold plaintiff liable for the debt after receiving notice that the debt was the result of identity theft." Even if taken at face value, none of these allegations identify any actionable deception by H&R Block.

Moreover, even if any of the alleged matters could constitute fraud, there is no specific allegation of any conduct by H&R Block to accomplish the alleged acts. To the contrary, the more specific allegations in the complaint tend to show that H&R Block did <u>not</u> engage in any of these supposed wrongful acts. For instance, the complaint alleges that H&R Block promptly investigated Plaintiff's identity theft claim and notified her that the loan would be forgiven; and alleges that it was <u>HSBC Bank</u> (not H&R Block) that thereafter sent her correspondence purporting to enforce the loan. *See* Am. Complaint, ¶¶ 17 (H&R Block told Plaintiff the loan would be forgiven), 19 ("…[P]laintiff received from <u>HSBC</u> a statement regarding the Emerald MasterCard, and threatening" to impact her credit report) and 28 (H&R Block retained an investigator). Quite simply, this is not a misrepresentation claim.

Furthermore, there is no allegation that H&R Block acted <u>knowingly</u> to deceive Plaintiff. *Rockford*, 368 Ill. App. 3d at 122 (dismissing consumer fraud claim because plaintiff failed to

allege actual knowledge of the facts allegedly omitted).  In fact, there are no allegations at all that H&R Block knew about the alleged identity theft prior to Plaintiff's report (upon which H&R Block took immediate action to investigate, address and rectify the situation).  Thus, to the extent Plaintiff is relying on alleged deceptive conduct as the basis for her claim under the Act, she has failed to allege sufficient facts to state such a claim.

> **2.    Plaintiff Has Not Alleged Sufficient Facts To Sustain A Claim For Unfair Practices Under The Consumer Fraud Act.**

Plaintiff's allegations fare no better under an "unfair practices" analysis.  Like a deceptive conduct claim under this act, an unfair practices claim must be alleged with specificity.  *See Rockford*, 368 Ill. App. 3d at 125.  "To constitute an unfair practice, the defendant's conduct must violate public policy, be so oppressive that it leaves the consumer with little alternative except to submit to it, and injure the consumer."  *Id*. at 124.  Plaintiff's complaint states no such claim.  Even accepting Plaintiff's account of events as true for the purposes of this motion, there is no indication nor allegation (specific or otherwise) that H&R Block engaged in any unfair practice, let alone a practice so oppressive and violative of public policy that it could support a claim under the Consumer Fraud Act.  Nor could Plaintiff truthfully make such allegations.

Accordingly, Plaintiff has failed to state any actionable claim under the Act.

> **E.    Plaintiff Failed To State A Claim For Invasion Of Privacy.**

The complaint alleges that H&R Block "intruded upon the seclusion of plaintiff when they pulled her credit report or otherwise accessed her private information."  Am. Complaint, ¶ 51.  Plaintiff's claim must be dismissed because:  1) Illinois has not definitively recognized a cause of action for invasion of privacy based upon intrusion upon seclusion; 2) Plaintiff has not sufficiently alleged an invasion into "private" matters; 3) Plaintiff has not alleged a physical intrusion into her boundaries; and 4) she has not alleged "anguish and suffering."

1.    **Illinois Has Not Dispositively Acknowledged A Claim For Invasion Of Privacy Based Upon Intrusion Of The Seclusion Of Another.**

While some Illinois courts have recognized a claim for invasion of privacy based upon an intrusion of the seclusion of another, others in the state have concluded that Illinois does not recognize such a claim.  Importantly, the Illinois Supreme Court has expressly declined to recognize the tort of intrusion upon the seclusion of another.  *Lovgren v. Citizens First National Bank*, 534 N.E.2d 987 (Ill. 1989).  The Illinois appellate court districts are split on this issue: The third and fifth districts have recognized the tort (*Melvin v. Burling*, 141 Ill.App.3d 786, 789 (3d Dist. 1986); *Davis v. Temple*, 284 Ill.App.3d 983, 994 (5th Dist. 1996)), while the first and fourth districts have held otherwise (*Kelly v. Franco*, 72 Ill.App.3d 642, 646-47 (1st Dist. 1979); *Bureau of Credit Control v. Scott*, 36 Ill.App.3d 1006, 1008-9, (4th Dist. 1976)).

In *Lovgren*, the Illinois Supreme Court discussed this tort as enunciated by the Restatement of Torts, but explicitly stated that by discussing the claim it did not intend to imply that it would recognize such a cause of action.  *Lovgren*, 534 N.E.2d at 988-89.  The court declined to address the conflict among the appellate districts as to whether the cause of action exists in Illinois and concluded that, regardless, the defendants' alleged actions in the case before it did not constitute an unreasonable intrusion.  *Id.* at 989.  The Supreme Court's *Lovgren* opinion illustrates the at best tenuous status of this tort in Illinois.  Under these circumstances, even if this Court might otherwise be inclined to recognize such a cause of action, Plaintiff's inadequately pled complaint should not be the test case to establish this new claim.

2.    **Even If Illinois Might Recognize This Cause Of Action, Plaintiff Has Not Alleged That H&R Block Intruded Into "Private" Matters.**

To the extent courts in Illinois have suggested that such a claim may exist, the elements for establishing a "claim for invasion of privacy through 'invasion upon the seclusion of another' appear to be:  "(1) an unauthorized intrusion or prying into the plaintiff's seclusion, (2) an

intrusion which is offensive or objectionable to a reasonable man; 3) an intrusion into a private

matter, and 4) anguish and suffering resulting from the intrusion." *Hoth v. American States Ins.*

*Co.*, 735 F.Supp. 290, 293 (N.D. Ill. 1990)(internal quotations omitted); *see also Busse v.*

*Motorola, Inc.*, 813 N.E.2d 1013, 1017 (Ill. App. 1 Dist. 2004), *appeal den.* 829 N.E.2d 786 (Ill.

2005) ("Each element of a tort must be 'truthfully alleged' to sustain a cause of action.").

  Thus, even assuming this claim could properly be recognized, as a threshold matter,

Plaintiff would need to plead and prove an intrusion into a "private" matter. *Busse*, 813 N.E.2d

at 1017. "Without private facts, the other three elements of the tort need not be reached." *Id*.

Moreover, for purposes of an intrusion upon seclusion claim, the "private" facts intruded upon

must be of an extremely sensitive and confidential nature. *See, e.g., Busse*, 813 N.E.2d at 1015

(rejecting invasion of privacy claim because the data in question – including customers' names,

addresses, birthdates, social security numbers, wireless phone numbers, account numbers, start-

of-service dates and the telephone serial numbers – was not sufficiently "private").

  There is no specific allegation that H&R Block misappropriated any such "private"

information. Rather, Plaintiff simply alleges that defendants intruded upon the exclusion of the

plaintiff "when they pulled her credit report or otherwise accessed her private information." Am.

Complaint, ¶ 51. This does not state a claim upon which relief can be granted.

  **3.**  **Even If Illinois Might Recognize This Cause Of Action, Plaintiff Has Not Alleged A Physical Intrusion Into Her Boundaries.**

  Furthermore, in addition to these other deficiencies, each of which alone are fatal to

Plaintiff's claim, Plaintiff's invasion of privacy claim also must be dismissed because she has not

alleged the remaining required elements, including "physical" intrusion into Ms. Robinson's

boundaries. In *Lovgren*, the Illinois Supreme Court explained that "nature of this tort depends

upon some type of highly offensive prying into the physical boundaries or affairs of another

person." *Lovgren*, 534 N.E.2d at 989. To illustrate, the *Lovgren* Court provided examples of actions that may form the basis for this tort, such as: "invading someone's home; an illegal search of someone's shopping bag in a store; eavesdropping by wiretapping; peering into the windows of a private home; and persistent and unwanted telephone calls." *Id.*; *see also Karraker v. Rent-A-Center, Inc.*, 239 F.Supp.2d 828, 837-38 (C.D. Ill. 2003) (claim failed for no "intrusion into their physical boundaries or affairs" where defendant required employees and applicants to submit to a battery of written tests that collected information about the individual's personality, sexual preferences and orientation, religious beliefs and practices, and medical conditions; which information was then distributed to the employees' immediate supervisor and placed in the employees' personnel file).

 *Lovgren* and *Karraker* are informative here. The precedent established by these cases makes clear that Plaintiff has not alleged facts to suggest an actionable intrusion into her physical boundaries. As such, Plaintiff's attempted right of privacy claim should be dismissed.

 **4.    Plaintiff's Claim Also Should Be Dismissed Because She Has Not Alleged "Anguish And Suffering."**

 Likewise, Plaintiff's invasion of privacy claim also should be dismissed because she has not alleged sufficient injury. Under Illinois law, a plaintiff must prove that the alleged intrusion "caused anguish and suffering." *Hoth*, 735 F.Supp. at 293 (dismissing claim because plaintiff did not allege anguish and suffering). To meet her burden, plaintiff "must prove actual injury in the form of, for example, medical care, an inability to sleep or work, or a loss of reputation and integrity in the community." *Schmidt v. Ameritech Illinois*, 768 N.E.2d 303, 315 (Ill. App. Ct. 2002). "Injury is not presumed." *Id.* Additionally, a causal relationship between a plaintiff's anguish and defendant's alleged intrusion must be established. *Id.* at 317.

14

Here, the Amended Complaint contains only general, non-specific allegations that Plaintiff was damaged by defendants' actions, which fall far short of claiming any "anguish and suffering." Am. Complaint, ¶¶ 29, 47 and 53 (*e.g.*, she "spen[t] a considerable amount of time attempting to resolve the situation;" she "was damaged as a proximate result of defendants' actions."). At most, Plaintiff alleges she was inconvenienced by this matter. She certainly has not alleged any "anguish and suffering" of the type or level to support a right of privacy claim.

For all of these reasons, Plaintiff's claim for invasion of privacy should be dismissed.

## IV.    CONCLUSION

Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted. If Plaintiff has, in fact, been a victim of identity theft, while certainly regrettable, H&R Block is not subject to vicarious liability for the acts of the "imposter" who perpetrated this potential crime. Rather, Plaintiff's effort to spin this unfortunate incident into a host of Federal and State claims against H&R Block is misguided and unsustainable as a matter of law.

WHEREFORE, H&R Block, Inc. requests that the Court dismiss all of plaintiff Tiffany Robinson's claims against it, award H&R Block, Inc. its costs incurred in the defense of these claims, and grant such other and further relief as the court deems just and proper.

Respectfully submitted,

**H&R BLOCK ENTERPRISES, INC.**

By:___/s/ Stacey R. Gilman_____
      Stacey R. Gilman
      Nick J. Kurt
      **BERKOWITZ OLIVER WILLIAMS**
      **SHAW & EISENBRANDT LLP**
      2600 Grand Boulevard, Suite 1200
      Kansas City, Missouri 64108
      Telephone:    (816) 561-7007
      Facsimile:    (816) 561-1888

\* Ms. Gilman and Mr. Kurt have been
admitted *pro hac vice*

And

By:   /s/ Keli M. Videtto
         Martin B. Carroll
         Keli M. Videtto
         **FOX, HEFTER, SWIBEL, LEVIN &**
         **CARROLL, LLP**
         200 W. Madison Suite 3000
         Chicago, IL 60606
         (312) 224-1200

## CERTIFICATE OF SERVICE

  The undersigned, an attorney, hereby certifies that a copy of the foregoing Memorandum in Support of Its Motion to Dismiss was filed and served electronically with the Clerk of the Court of Illinois, Northern District, Eastern Division, 219 South Dearborn Street, Chicago, Illinois and the same being accomplished pursuant to CM/ECF this 12th day of May, 2008, on:

    Keith J. Keogh
    Alexander H. Burke
    Law Offices of Keith J. Keogh, Ltd.
    227 W. Monroe St., Suite 2000
    Chicago, Illinois 60606
    Telephone:  312-726-1092
    Fax:  312-726-1093
    Attorneys for Plaintiff

    Jessica S. Robinson
    Kevin M. Fee, Jr
    Sidley Austin LLP
    One South Dearborn Street
    Chicago, IL 60603

    John Kenneth Van De Weert
    Sidley Austin LLP
    1501 K Street, N.W.
    Washington, DC 20005

            /s/Keli M. Videtto

17