**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Tiffany Robinson, | ) | |
| | ) | 08 C 185 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Hon. Ronald A. Guzman |
| | ) | |
| H&R Block Enterprises, Inc. | ) | |
| and HSBC Bank USA, N.A., | ) | Jury Demanded |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO
<u>DEFENDANT'S MOTION TO DISMISS</u>**

Keith J. Keogh
Alexander H. Burke
Law Offices of Keith J. Keogh, Ltd.
227 W. Monroe Street, Suite 2000
Chicago, Illinois  60606
312.726.1092 (office)
312.726.1093 (fax)

Mega Tax Preparer and credit arranger H&R Block's second motion to dismiss: (1) argues that the Seventh Circuit was wrong in deciding *Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 975 (7th Cir. 2004) without citing the case, (2) states that it cannot be liable under any circumstances for its tax preparer employee that stole plaintiff's identity, (3) falsely asserts that Illinois Appellate Courts do not recognize "intrusion upon seclusion," and then argues, contrary to its own policy, that a person's social security number, employment information, income and other information is not "private," and (4) claims that doing so itself, or permitting an employee, to steal a customer's identity is neither "deceptive" nor "unfair" under the Consumer Fraud Act.

It is this kind of nonchalant attitude that must have led to the shameful events complained of in this case. Needless to say, defendant's motion should be denied. Plaintiff explains this claim-by-claim below.

**I.     FACTS**

On or about January 30, 2007, plaintiff went to H&R Block at 87th and Stoney Island in Chicago to have her income tax return prepared, and to apply for an Instant Money Advance Loan. At that time, H&R Block told plaintiff that they would do her taxes, but that they would take a sum of $600 out of her refund. AC ¶6. H&R Block's Privacy Policy Statement for Tax Services, (Exhibit 1), touts that "keeping client information confidential is nothing new to H&R Block. We have always known that privacy is important to you, and we are committed to safeguarding your personal information." AC ¶3.

Plaintiff asked why H&R Block would have to take the $600. Defendant told plaintiff that she had previously taken out a "H&R Block Emerald Prepaid MasterCard," for which she was liable in the amount of $600. On information and belief, based upon a letter sent to plaintiff from H&R Block, the Emerald MasterCard had been taken out two days earlier, on January 28, 2007. AC ¶7.

Also at that time, H&R Block provided plaintiff with Exhibit 2, a letter stating that her loan had been denied by HSBC. Plaintiff never received any loan denial letter from HSBC regarding the Instant Money Advance Loan.AC ¶8. Plaintiff had H&R Block do her taxes in 2003. At that time, she submitted to H&R Block a paystub from an employer. On information and belief, the imposter who opened the Emerald MasterCard in plaintiff's name used plaintiff's paystub with plaintiff's information on it as "proof" of identity. AC ¶9. On January 30, 2007, plaintiff insisted that she had not taken out a loan and requested to speak with a manager. AC ¶10. Plaintiff spoke with the person in charge at that H&R Block location, who told plaintiff that plaintiff had received a loan from H&R Block for $600.00. The manager further stated that withdrawals had been made on January 24, 2007, January 28, 2007 and January 30, 2007. AC ¶11.

Plaintiff asked the person in charge to provide her with the paperwork for the loan but plaintiff was told that to go to the H&R Block location at 95th near Stoney Island Avenue. AC ¶12. The H&R Block representative at the 95th and Stoney Island Avenue location told plaintiff to go to H&R Block's 95th and Western location. AC ¶13. On January 31, 2007, plaintiff went to the 95th and Western location, and explained the situation. The manager, Victor, told plaintiff that H&R Block would look into the situation, and get back to her. AC ¶14. On January 31, 2007, Plaintiff reported that her identity had been stolen to the Chicago Police. AC ¶15. On about January 31, 2007, Plaintiff then called the telephone number for the debit card and asked that the card be closed. The card was closed. AC ¶16. On February 2, 2007, plaintiff received a call from Arthur Grant who identified himself as the district manager of H&R Block. Mr. Grant informed plaintiff that the $600.00 loan would be forgiven and that her tax return would be prepared free of charge. He also indicated that H&R Block would provide plaintiff with credit security protection for one year. AC ¶17.

Because plaintiff no longer trusted H&R Block with her personal information, plaintiff did her own taxes for 2006 online. AC ¶18. On February 23, 2007, plaintiff received from HSBC a statement regarding the Emerald MasterCard demanding $600.00, and threatening "NEGATIVE IMPACT TO YOUR CREDIT REPORT." AC ¶19. Feeling helpless, she contacted the Illinois Attorney General. The Attorney General mailed plaintiff a letter requesting that she do a formal complaint on March 8, 2007. AC ¶20. On March 16, 2007, plaintiff filed a formal complaint with the Illinois Attorney General's office. AC ¶21. On April 17, 2007, the Illinois Attorney General contacted plaintiff and provided her with case number 2007-CONSC-00175804. AC ¶22. On May 18, 2007, the Illinois Attorney General's office sent plaintiff a letter stating that it had not received any response from these defendants. AC ¶23.

On July 27, 2007, HSBC sent plaintiff a letter indicating that it did not hold her responsible for the $600 loan. Exhibit 3. AC ¶24. Exhibit 3 also states that "H&R Block notified [HSBC] of an identity theft claim involving one of [H&R Block's] employees." AC ¶25. HSBC's letter confirmed that an employee or agent of H&R Block applied for and received an H&R Block Emerald Prepaid MasterCard in plaintiff's name. AC ¶26. The person who applied for the credit card in plaintiff's name improperly authorized either H&R Block or HSBC to access plaintiff's credit report. AC ¶27.

H&R Block retained the services of a private investigator to look into the case. When the investigator learned that the debt had been forgiven, he curtly told plaintiff that she was "no longer the victim." AC ¶28. Plaintiff has been damaged as a result of defendants' actions. She has expended numerous hours trying to clear her name, has out-of-pocket costs associated with sending disputes with the credit bureaus to clear her credit report, and her privacy has been invaded. AC ¶29.

3

## II.   STANDARD OF REVIEW

In *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002), the Supreme Court reemphasized the extremely liberal pleading standard of the Federal Rules of Civil Procedure, noting that a dismissal of claims is only appropriate in the rarest circumstances. The plaintiff, but not the defendant, is entitled to set forth what set of facts consistent with the allegations of the complaint would sustain a claim. *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992).

In federal court "one pleads 'claims' (which is to say, grievances) rather than legal theories and factual specifics." *Simpson v. Nickel*, 450 F.3d 303, 305 (7th Cir. 2006). Rule 8(a)(2) still requires nothing more than "a short and plain statement of the claim showing that the pleader is entitled to relief." The recent Supreme Court case *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007), has not changed this: "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."

## III.   ARGUMENT

### A.   Equal Opportunity Credit Act

The ECOA was enacted in 1974 to broadly prohibit discrimination in credit transactions. See *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 146 (5th Cir. 1983). It was amended in 1976 to require creditors to furnish to borrowers whose credit was denied a written explanation of the specific reasons why an adverse action was taken against a consumer. *Id.*; 15 U.S.C. §§ 1691(d)(2) and (3) ("A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken."). Failure by the creditor to send such a notice is a violation, regardless of whether there is any allegation of discrimination, and a successful plaintiff may recover up to $10,000 punitive damages, plus actual damages and fees and costs. 15 U.S.C. § 1691e(a)-(d); *Jochum v. Pico Credit Corp. of Westbank*, 730 F.2d 1041, 1043 (5th Cir. 1984);

4

*Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 2d 720 (N.D.Ill. 2005); *Miller v. River Oaks Lincoln-Mercury, Inc.*, 04 C 6076, 2005 U.S. Dist. LEXIS 20377 (N.D.Ill. Sept. 19, 2005) *Rayburn v. Car Credit Ctr. Corp.*, 2000 U.S. Dist. LEXIS 14944, *7-8, No. 00 C 3361 (N.D. Ill. Oct. 6, 2000).

  H&R Block argues that plaintiff has not stated a claim because it could never be a "creditor" under the ECOA section 1691(d). Such an argument is contrary to existing Seventh Circuit jurisprudence.

  The defendant car dealership in *Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 975 (7th Cir. 2004), made an argument identical to that which H&R Block brings here. In rejecting defendant's assertion that it is not a "creditor," the Court held that:

> although Gateway ultimately got Treadway into a vehicle based on her godmother's credit, it did not even attempt to obtain financing for Treadway based on her own credit, as she requested. While an automobile dealership is sometimes considered merely an "arranger" or "referrer" with regard to credit, here Gateway effectively became the denier of credit.

*Treadway*, 362 F.3d at 975. There cannot be any confusion about what has been alleged. Plaintiff sued HSBC and H&R Block, alternatively, under the ECOA.

  Judge Gettleman more recently held that whether a dealership is a creditor is a factual issue to be determined at summary judgment, if appropriate, or at trial:

> Whether a car dealer such as defendant is a creditor is a fact specific question, and courts have set forth certain guidelines to aid in the determination:
>
> (1) whether the dealer sets the terms of the credit;
>
> (2) whether the dealer negotiates with the customer as to the payment terms;
>
> (3) whether the dealer receives proceeds from a portion of the interest rate; and
>
> (4) whether the dealer conducts an initial assessment of the customer's credit application to screen those that it determines not to send to a lender.
>
> *Barnette v. Brook Road Inc.*, 457 F. Supp.2d 647, 655 (E.D. Va. 2006).

> Whether defendant qualifies as a creditor under the ECOA when these factors are applied to its actions is a question of fact that cannot be determined on a motion to dismiss. Plaintiff has alleged that defendant is a creditor and at this stage need do no more. Accordingly, defendant's motion to dismiss Count I is denied.

*Stegvilas v. Evergreen Motors, Inc.*, 2007 U.S. Dist. LEXIS 35303, at *8-9 (N.D. Ill. May 11, 2007). That H&R Block regularly participates in each of these factors is consistent with the allegations of the complaint. Further, it is obvious from the allegations in the complaint that H&R Block actively and regularly participates in the loan application process. It is H&R Block that processes and submits the tax returns that are used as collateral for the loans. The anticipated the tax refund amount, which H&R Block determines, is the amount that determines the credit limit. H&R Block thus actively and regularly participates in the terms of credit. If H&R Block were to determine that there was no tax refund, or that the consumer had used the anticipated refund for another loan (such as in plaintiff's case), upon information and belief, the consumer's credit application would not submitted to any third party at all. In this sense, H&R Block also regularly and actively participates in the initial assessment of the consumer's credit application to screen those that it determines not to send to a lender. Further, upon information and belief, based upon its participation in the program H&R Block receives a portion of the proceeds from Instant Money Advance Loans.

Furthermore, H&R Block is the actual bank and creditor for its "H&R Block Emerald Prepaid MasterCard." Exhibit 4. "H&R Block Bank, a Federal Savings Bank." Anticipating the reply brief, plaintiff respectfully submits that corporate formalities (should they allegedly exist) should not be available to save defendant from liability. Aside from the fact that it represented to the Court that H&R Block Enterprises, Inc. is the "correct defendant" in this case, the identity thief who stole plaintiff's information obtained such information H&R Block's computer – the same

6

source that was used with respect to plaintiff's valid request for credit.[1]

Even without the above allegations and analysis, plaintiff's ECOA allegations fall within Rule 8's pleading requirements. Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" *S. Austin Coalition Cmty. Council v. SBC*, 274 F.3d 1168, 1171 (7th Cir. 2001). Plaintiff's allegations are sufficient. If H&R Block never forwarded plaintiff's application for credit to HSBC, and if it regularly performs such a function, plaintiff has stated a claim. An allegation that defendant is a "creditor" is not necessary to explain plaintiff's plausible theory for relief.[2]

It is clear from the face of the complaint that plaintiff's ECOA claim is based on defendant's failure to provide her with an "adverse action" notice. That is all the federal rules require. After all, "[w]hether defendant qualifies as a creditor under the ECOA when these factors are applied to its actions is a question of fact that cannot be determined on a motion to dismiss. *Stegvilas v. Evergreen Motors, Inc.*, 2007 U.S. Dist. LEXIS 35303, at *7-9 (N.D. Ill. May 11, 2007).

### B. Plaintiff is Not Required to Plead Facts Showing Vicarious Liability in Federal Court.

A plaintiff in federal court alleging state law claims not subject to Rule 9's heightened pleading standard must plead facts that provide the defendant notice of the claim, and plausibly suggest that he has a right to relief. *Ferrell v. Harrington*, No. 07 C 3027, 2007 U.S. Dist. LEXIS

---

[1] Incidentally, although defendant asserted that H&R Block Enterprises, Inc. was the correct defendant here, that entity appears to be all but hidden from the public view. A search for that entity on H&R Block's website leads to no "hits." Regardless of its apparent corporate structure, H&R Block intentionally holds itself out to the public as one giant tax and credit company. See, www.hrblock.com.

[2] If this Court believes that an ECOA complaint based upon 15 U.S.C. § 1691(d) must include an allegation that the defendant is a creditor, plaintiff requests leave of court to add such an allegation.

82162 (N.D. Ill. Nov. 2, 2007). There is no argument in the motion to dismiss that defendant does not understand the set of facts under which plaintiff has sued it. Nor can it. The complaint includes dates and times, and copious facts about what happened behind the scenes with defendants' mishandling of her information. The *respondeat superior* argument may be appropriate for summary judgment, or a motion to dismiss in a fact-pleading jurisdiction, but is not appropriate at the pleading stage in federal lawsuit.

Even if this Court considers the sufficiency of plaintiff's complaint under *respondeat superior*, which it should not, the complaint survives. The consumer fraud and invasion of privacy claim against H&R Block is that plaintiff entrusted it with her private and personal information such as her social security number, and an employee of defendant published that information.[3]

Under Illinois law, an employer is liable for the torts of its employees if (1) the action is of the kind he is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is actuated, at least in part, by a purpose to serve the master. Conversely, a tort is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master. *Duffy v. United States*, 966 F.2d 307, 314 (7th Cir. 1992).

The primary commercial activities of defendant H&R Block are to (1) do people's taxes for a fee, and (2) provide short-term loans to taxpayers using projected tax refunds as collateral. Defendants HSBC and H&R Block work together as a commercial enterprise to provide these short-term loans, although H&R Block does so on its own, too.

This is not the first time its employees have stolen customers' tax preparation information

---

[3] Plaintiff is filing concurrently a motion for leave to amend the complaint to add a count for breach of fiduciary duty.

8

and used it for nefarious purposes. H&R Block concedes this in the communication it sent to plaintiff stating that "incidents like this occur," and that they have a policy of dealing with the police and other authorities (although in this case, H&R Block apparently ignored the Illinois Attorney General's inquiries).[4] With respect to the first prong regarding the employee being hired to perform the actions complained of, on information and belief, taking out refund loans on behalf of taxpayers was part of what the person who perpetrated the fraud was authorized to do. No other employees would have had access to the information necessary to do so, and certainly no non-employees should have had such access.

With respect to the second prong concerning the time and place of the fraud, again, plaintiff alleges that, upon information and belief, the fraud was perpetrated at an H&R Block location at 86th and Stoney Island, during the normal work hours.

The third prong for *respondeat superior* is satisfied if plaintiff alleges that the tort "is actuated, at least in part, by a purpose to serve the master." H&R Block and HSBC benefit from Instant Money Advance Loans and Emerald Mastercards through collection of interest and late fees.

---

[4] H&R Block appears to be a recidivist. E.g. *Jones v. Commerce Bank, N.A.*, 2006 U.S. Dist. LEXIS 65630, at *13 (S.D.N.Y. Sept. 15, 2006) (granting motion to amend complaint to add H&R Block as a defendant in identity theft case); "Former H&R Block Manager Accused in Identity theft Ring," NewYorkTimes.com (January 3, 2003), Exhibit 5, (reporting that an H&R Block manager allegedly provided its customers' personal information to other thieves, who took out refund loans in the customers' names.); H&R Block employee fired, charged with identity theft, Northwest Florida Daily News (March 19, 2008), Exhibit 6, (reporting that a former H&R Block employee was arrested for allegedly stealing customers' information and opening "Emerald Cards" in their names); "Investigators: Tax Refund Scam" ABC Affiliate WXYZ, Detroit (February 20), Exhibit 7, (reporting that H&R Block claimed that an employee stealing $4,000 from a customer through a debit card backed by the customer's tax refund check was an "isolated incident,"); "H&R Block Employee Stole Woman's Identity, ABC News local affiliate WTVG-TV/DT, Toledo, OH (March 28, 2008), Exhibit 8, (reporting that H&R Block admitted that its employee stole $7,063 from a customer through taking her refund check); see also "A taxing identity theft risk," Patricia Sabatini, Oakland Tribune (March 2, 2004), Exhibit 9, (reporting that H&R Block did not adequately protect consumer data at tax preparation booth).

It is less than certain that the loans would never be at least partially paid off: often times such loans are paid off by the taxpayer because she does not know any better, or because she thinks that she took out the loan.

Upon information and belief, H&R Block received an immediate benefit from the $600 IMAL loan in the form of a commission. This case is therefore wholly distinguishable from *National Accident* 333 F.Supp.2d 720 (N.D.Ill. 2004), cited by defendant, because here the actions benefitted defendants, whereas there, the thief was stealing money directly from the bank. Plaintiff has stated a plausible entitlement to relief, and her invasion of privacy claim should not be dismissed.

### C. Plaintiff has Pleaded Fraud with as Much Specificity as Possible Under the Circumstances.

Rule 9(b) requires a plaintiff to plead the circumstances of fraud in detail. "This means the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Plaintiff has pleaded as many facts as she currently has access to, and has filed a concurrent motion for leave to file an amended complaint to bolster those facts in response to this motion to dismiss. In case plaintiff's motion for leave to file an amended complaint is denied, plaintiff submits that following, which demonstrates that the Amended Complaint itself states a claim under the Illinois Consumer Fraud Act.

**Who -** Plaintiff has alleged as much as she knows about who perpetrated the fraud. She attached to the complaint, <u>Exhibit 3</u>, a letter from HSBC blaming and employee at H&R Block for the fraud. H&R Block also sent plaintiff a similar letter apologizing for the fraud and acknowledging that this sort of fraud "happens." Although the name of the actual person who perpetrated the fraud is unknown to plaintiff, paragraph 28 alleges that plaintiff inquired to H&R Block's private investigator as to details about the fraud, he would not disclose such information,

10

even though she was entitled to such information pursuant to 15 U.S.C. § 1681g(e).

Where the facts and circumstances constituting the alleged fraud are inaccessible to plaintiff, Rule 9(b)'s particularity requirement is relaxed. *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 684 (7th Cir. 1992). In this case, plaintiff attached Exhibit 3 to the complaint, which states that an H&R Block was responsible for the fraud. Upon information and belief, this statement was true. This is sufficient under Rule 9(b), and defendant's motion should be denied.

**What & How** - The complaint alleges that a $600 IMAL and an H&R Block Emerald MasterCard were taken out in her name, without her prior authorization. These allegations are made with particularity, and, if true, clearly amount to fraud. Because of the uncertainties involved with the type of theft H&R Block has perpetrated against plaintiff, and the veil of secrecy that it has put into place with regard to the information it has regarding the fraud, these allegations should be deemed sufficient to state a claim under Rule 9(b), and plaintiff should be granted leave to amend the complaint liberally in the future in case other accounts or fraud is discovered in the future.[5]

**When & Where** - The complaint alleges that the H&R Block Emerald MasterCard was taken out on January 28, 2007. AC ¶7. Plaintiff learned of the fraudulent activity on January 30, 2007. AC ¶6, 10. The Amended Complaint goes through all of the dates relating to the fraudulent activity plaintiff is aware of. Again, there may be additional accounts that were taken out in plaintiff's name that she is currently unaware of. Plaintiff's request to HSBC pursuant to 15 U.S.C. § 1681g(e) was ignored. As alleged in the complaint, H&R Block sent plaintiff on the proverbial

---

[5] Plaintiff's amendment of pleadings deadline is June 15, 2008, and she initiated discovery at the first possible time, the same day the scheduling order was entered, on May 13, 2008. Given the nature of this case, plaintiff respectfully requests that this Court either extend the cutoff date for amendments of pleadings, or liberally consider any motion for leave to amend after the deadline.

"wild goose chase" during her quest to figure out what happened. AC ¶¶9-15. These allegations also deal with the "where" of the fraud.

Further, defendants' Rule 26(a)(1) disclosures contained no documents whatsoever. Plaintiff's Rule 26(a)(1) disclosures provided copies of all documents she has relating to her allegations. To date, neither defendant has produced one page of documents.

Under these circumstances, where defendants are in control of all of the facts surrounding the fraud, it would be unjust to dismiss the complaint. A party should not be rewarded for refusing to tell a consumer about its own fraudulent activities. Plaintiff filed a motion for leave to amend the complaint concurrently with this response. If this Court finds the Amended Complaint insufficient because of a lack of particularity notwithstanding defendants' refusal plaintiff respectfully requests that it permit plaintiff leave to amend the complaint to add additional specificity.

### D.     ICFA Claims for Unfair Conduct Are Not Subject to Rule 9(b).

Treating a consumer unfairly within trade or commerce violates the Consumer Fraud Act, regardless of whether any deception occurred. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 775 N.E.2d 951 (2002). Consumer fraud claims for unfair conduct are not subject to Fed.R.Civ.P. 9(b)'s particularity requirements. *Centerline Equipment Corp. v. Banner Personnel Service, Inc.*, 2008 U.S. Dist. LEXIS 15946, at *22 (N.D.Ill. March 3, 2008).

In determining whether a practice is "unfair," Illinois courts consider: (1) whether the practice offends public policy, (2) whether it is immoral, unethical, oppressive or unscrupulous, and (3) whether it causes substantial injury to consumers. All three are not necessary, but all three are present here.

An action violates public policy if "it is within at least the penumbra of some common-law, statutory or other established concept of unfairness;" *People ex rel. Hartigan v. Knecht Services,*

12

*Inc.*, 216 Ill. App. 3d 843, 854 575 N.E.2d 1378 (2d Dist. 1991).  Permitting theft of a customer's private tax and credit information to permit an employee fraudulently open various lines of credit violates established concepts of fairness.  It also violates the Illinois Criminal Code, 720 ILCS 5/16G-5, and the privacy principles in the FCRA and FDCPA as explained, *infra*.

Practices that inflict unavoidable injury are oppressive and unfair. *Elder v. Coronet Ins. Co.*, 201 Ill. App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990).  Plaintiff had no choice about whether the information would be stolen and fraudulently used.  H&R Block certainly promised plaintiff that such would not happen.  <u>Exhibit 1</u>.  When finally given the choice of possibly another round of identity theft (albeit at the same time receiving free tax preparation services), plaintiff opted to do her own taxes.  AC ¶¶17-18.

There cannot be dispute that plaintiff was substantially injured.  Her personal information was stolen and used to open several lines of credit.  She has gone through substantial out-of-pocket cost, inconvenience and distress as a direct result of defendant's violations.  The motion to dismiss should be denied.

### E. Plaintiff Has Stated a Claim for Invasion of Privacy

Directly contrary to H&R Block's recitation of law on the subject, every single appellate court in Illinois has recognized the intrusion upon seclusion; the Fourth District the most recently:

> However, since our decision in *Scott*, all four of the other appellate districts in the state have explicitly recognized that a cause of action exists for the tort of intrusion upon seclusion. [*Burns v. Masterbrand Cabinets, Inc.*, 369 Ill. App. 3d 1006, 1011, 874 N.E.2d 72 ( 4th Dist. 2007) (Collecting cases.)]

In the absence of a compelling reason to believe that the Illinois Supreme Court would not agree with all five Districts' recognition of the tort (H&R Block has provided none), this Court should follow the Illinois Appellate Court's lead and deny defendant's motion to dismiss.

H&R Block's next argument that plaintiff's tax preparation and credit report information are not "private" is belied by its own privacy policy, which is attached to the complaint as <u>Exhibit 1</u>, and by fact.  In its policy, H&R Block admits that plaintiff's tax and credit information is "private," when it states that "keeping client information confidential is nothing new to H&R Block. We have always known that privacy is important to you, and we are committed to safeguarding your personal information."  If H&R Block has "always known" that plaintiff's financial information is "important" to its customers, and is "committed to safeguarding" such, its attorneys cannot turn around and say that the information is not "private."

Further, there is no requirement in federal court that a plaintiff plead the specific "private" facts that entitle her to relief.  If this Court does consider whether the information contained in a consumer report is "private" on this Rule 12 motion, which it should not, there is substantial caselaw and statutory support for a finding that one's credit report contains private information, which the ordinary person would find objectionable if disclosed to unauthorized third parties.

Credit reports contain (not always correct) information about a person's financial life, including name, address, previous addresses, employer, previous employers, telephone numbers, credit scores allegedly delinquent credit accounts, credit inquiries, credit scores and other such information.  This information is so important and private that Congress has passed laws that prohibit its disclosure under certain circumstances.  This case is thus more egregious than *Busse v. Motorola*, 813 N.E.2d 1013, 351 Ill. App. 3d 67 (1st Dist. 2004), because the data that was intruded upon was even more private, including objective information and subjective assessments about plaintiff's creditworthiness.

There is statutory support for plaintiff's position that such information is private, too.  For example, the stated purpose of the Fair Credit Reporting Act is "to insure that consumer reporting

14

agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). *Pietras v. Sentry Ins. Co.*, 2007 U.S. Dist. LEXIS 16015 (N.D. Ill. Mar. 6, 2007). Similarly, the Fair Debt Collection Practices Act was enacted "to eliminate abusive debt collection practices" which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Miller v. Payco-General American Credits, Inc.*, 943 F.2d 482, 484 (4th Cir. 1991). See also *Brents v. Morgan*, 221 Ky. 765, 299 S.W.967 (1927); *Santiesteban v. Goodyear Tire*, 306 F.2d 9 (5th Cir. 1962) (public disclosures of debt held to be invasion of privacy).

H&R Block's argument that plaintiff has not alleged a physical intrusion into her boundaries is belied by the very quote it comes from: intrusions into a plaintiff's private "affairs" are actionable. *Lovgren*, 534 N.E.2d at 989. Robinson has alleged that H&R Block unreasonably intruded upon her personal financial affairs by impermissibly pulling her credit report. This is highly objectionable conduct, and satisfies Rule 8's pleading requirements. Finally, plaintiff has pleaded that she was damaged as a proximate result of defendant's actions. No other allegations are necessary under Rule 8.

Because of the rise of identity theft and the utmost importance of credit in today' society, improper prying into a person's credit report is highly objectionable to the ordinary person, and the motion to dismiss should be denied.

**CONCLUSION**

      For the forgoing reasons, defendant's motion to dismiss should be denied.

      Respectfully submitted,

      /s/Alexander H. Burke

Keith J. Keogh
Alexander H. Burke
Law Offices of Keith J. Keogh, Ltd.
227 W. Monroe Street, Suite 2000
Chicago, Illinois   60606
312.726.1092 (office)
312.726.1093 (fax)